***NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAVE PAK, INC., <br><br> Plaintiff, <br><br> v. <br><br> BUNZL, USA INC., <br><br> Defendant. | Civil Action No. 3:21-00295 (FLW) <br><br> **OPINION** |

**WOLFSON, Chief Judge:**

Plaintiff Rave Pak, Inc. ("Plaintiff" or "Rave Pak") brought this breach of contract dispute against Defendant Bunzl Distribution Northeast, LLC ("Defendant" or "Bunzl")[1] (collectively, the "Parties") in connection with the purchase of custom-manufactured goods. Presently before the Court are two separate motions filed by Defendant (i) to transfer this action to the United States District Court for the Eastern District of Missouri, the venue allegedly agreed upon by the parties through a disputed forum-selection clause, and (ii) to dismiss certain counts of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Defendant's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is **GRANTED**, and therefore, this matter is transferred to the United States District Court for the Eastern District of Missouri. Defendant's Motion to Dismiss is denied without prejudice, and it may bring the motion in the transferee court.

---

[1] Defendant was incorrectly pled as "Bunzl, USA Inc." (*See* Compl. at *1.)

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

For the purposes of resolving the Motion to Transfer, the Court sets forth only the facts that it deems relevant to the Parties' dispute over whether to transfer venue. Rave Pak is a New York corporation, owned and operated by Robert Rodriguez ("Rodriguez"), which conducts the majority of its business from a warehouse in Edison, New Jersey. (Declaration of Robert Rodriguez in Opposition to Defendant's Motion to Transfer ("Rodriguez Decl.") at ¶¶ 1, 9.) In or about February 2018, Plaintiff began negotiations with Bunzl, a Missouri limited liability company, for the manufacture of custom containers and lids, which Bunzl planned to purchase from Plaintiff and later sell to a third party. (Rodriguez Decl. at ¶ 10; *see also* Defendant's Memorandum of Law in Support of Motion to Transfer Venue ("Def. Moving Br.") at 1.)

The parties eventually contracted with one another, doing business primarily through Defendant's blanket Purchase Orders. (Rodriguez Decl. at ¶ 17.) The parties acknowledge that these Purchase Orders contained a reference to a separate document, entitled "Bunzl Distribution USA, Inc.'s Standard Purchase Order Terms and Conditions" ("Terms and Conditions").[2] (*See* Def. Br. at 1-2; Plaintiff's Brief in Opposition to Defendant's Motion to Transfer Venue ("Pl. Opp. Br.") at 3.) The Terms and Conditions contain choice-of-law and forum-selection clauses, which provide:

> The Purchase Order shall be governed by the internal laws of the State of Missouri without giving effect to the conflicts of law provisions thereof. All suits arising from or concerning the Purchase Order shall be filed in either the United States District Court for the Eastern District of Missouri or in the Circuit Court for the County of St. Louis, Missouri…

---

[2]     Though Rodriguez admits to having noticed the reference to the Terms and Conditions written on the Purchase Orders, he denies ever having received or reviewed that document. (*See* Rodriguez Decl. at ¶¶ 17-21.)

2

(Def. Moving Br., Ex. B; Declaration of Michael Annis, Esq. in Support of Defendant's Motion to Transfer ("Annis Decl.") at ¶¶ 4-6.)

On December 4, 2020, Rave Pak filed suit in the Superior Court of the State of New Jersey, Law Division, Middlesex County, asserting contract claims to recover Bunzl's allegedly unpaid balance of $257,387.76. (*See*, *e.g.*, Compl.) Specifically, the Complaint asserts six causes of action, including: Breach of Contract, Book Account, Account Stated, Unjust Enrichment, Quantum Meruit, and Promissory Estoppel. (Compl. at ¶¶ 20-47). On January 7, 2021, Defendant filed a Notice of Removal with the New Jersey state court and removed the action to this Court. (*See* ECF No. 1.) Defendant subsequently filed the instant motions to transfer this action to the Eastern District of Missouri on January 8, 2021, and to dismiss Counts II, III, and VI of the Complaint on January 12, 2021.

## II.  STANDARD OF REVIEW

A district court may transfer a civil action to any other district where the case might have been brought if the transfer serves "the convenience of parties and witnesses" and is "in the interest of justice." 28 U.S.C. § 1404(a). The transfer decision is usually within "the sound discretion of the trial court." *Teva Pharmaceuticals USA, Inc. v. Sandoz Inc.*, No. 17-275, 2017 WL 2269979, at *4 (D.N.J. May 23, 2017); *Days Inns Worldwide, Inc. v. RAM Lodging, LLC*, No. 09–2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010); *Cadapult Graphic Sys. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). Moreover, where "venue is proper for one defendant but not others, a district court may sever and transfer the claims as to any defendant ... and retain the remainder of the claims." *High 5 Games, LLC v. Marks*, No. 13-7161, 2019 WL 3761114, at *12 (D.N.J. Aug. 9, 2019); *see also D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110-11 (3d Cir. 2009).

"When the parties have agreed to a valid forum-selection clause," however, the Supreme Court has held that "a district court should ordinarily transfer the case to the forum specified in that clause." *Atlantic Marine Coast. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 62 (2013). In such a case, a court must (1) give no weight to the forum preferred by "the party defying the forum-selection clause"; (2) deem the private interests to "weigh entirely in favor of the preselected forum"; and (3) analyze the public interests only. *Id.* at 63-64.

Post-*Atlantic Marine*, the presence of a valid forum-selection provision will result in the transfer of a case to the designated forum in all but the most unusual cases. *See Weichart Real Estate Affiliates, Inc. v. CKM 16, Inc.*, 2018 WL 652331, at *5 (D.N.J. Jan. 31, 2018) (presence of valid forum-selection a "powerful consideration"); *see also In re Ryze Claims Solutions, LLC*, 968 F.3d 701, 711 (7th Cir. 2020) ("Neither [party nor lower court] identified any decision since *Atlantic Marine* in which a district court refused to enforce a valid forum-selection agreement under § 1404(a) due to exceptional circumstances."); *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (forum-selection provision compels transfer absent extraordinary circumstances). Ultimately, however, "[t]here is no rigid rule governing a court's determination," and "each case turns on its facts." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988) (internal quotations omitted); *Solomon*, 472 F.2d at 1045 ("[T]he district court is vested with a large discretion."); *Control Screening*, 2011 WL 3417147, at *4 (same, but "broad" discretion).

## III.   DISCUSSION

Defendant argues that this action should be transferred to the Eastern District of Missouri, because the forum-selection clause is valid and no extraordinary circumstances exist to ignore the forum-selection clause. (*See* Def. Moving Br. at 3-5.) In response, Plaintiff argues that this action

4

should not be transferred because the forum-selection clause is not enforceable, and both private and public interest considerations favor the District of New Jersey. (*See* Pl. Opp. Br. at 4-12.)

### A.     Enforceability of the Forum-Selection Clause

Before discussing the propriety of transfer in this case, I must first determine the validity of the forum-selection clause contained in Bunzl's Terms and Conditions. In that regard, Defendant argues that the entirety of the Terms and Conditions, including the forum-selection provision, was properly incorporated by reference in the Purchase Orders and that Rodriguez's failure to request a copy of the Terms and Conditions does not void his acceptance of them. (*See* Def. Reply Br. at 2-5.) Plaintiff, on the other hand, argues that Rave Pak did not agree to the forum-selection provision, because Bunzl neither notified Plaintiff of its existence nor provided Plaintiff with a copy of the Terms and Conditions referenced in the Purchase Orders.[3] (Pl. Opp. Br. at 3-5.)

At the outset, no dispute exists regarding the Parties' contractual dealings, including the issuance and execution of Bunzl's Purchase Orders. (*See generally* Pl. Opp. Br. at 3; Def. Br. at 1-2.) Therefore, the threshold question is whether Bunzl properly incorporated the Terms and Conditions by reference in its Purchase Orders. Indeed, because the Third Circuit has instructed that "parallel agreements," such as forum-selection clauses, are enforceable even when contained in separate, unsigned documents referenced only by one party's terms, if the Terms and Conditions

---

[3]     Plaintiff further argues that the Terms and Conditions document is not properly before the Court; however, for purposes of this Motion to Transfer, the Court may consider the Terms and Conditions. *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973) (finding that in considering a motion to transfer, a district court may consider "affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer."). Indeed, the Complaint also references the Purchase Orders, which includes the language referencing the Terms and Conditions, on several occasions. (*See* Compl., ¶¶ 11, 12, 13, and 22.) Moreover, I accept the authenticity of the Terms and Conditions based on the representations made in the Declaration of Michael Annis, Esq. (Annis Decl. at ¶¶ 4-6).

were properly incorporated by reference, the forum-selection clause is enforceable against Rave Pak. *See Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003). A separate document is properly incorporated by reference where "[1] the underlying contract makes clear reference to [the] separate document, [2] the identity of the separate document may be ascertained, and [3] incorporation of the document will not result in surprise or hardship." *Standard Bent Glass Corp.*, 333 F.3d at 447 (3d Cir. 2003). When the parties contracting are seasoned merchants, as is the case here, "[it] is appropriate to require [the parties] to exercise a level of diligence that might not be appropriate to expect of a non-merchant." *Id*. at 447 n.10. With this heightened expectation of diligence in mind, the Court considers the *Standard Bent* factors, in turn.

        *i.*    *Reference to the Terms and Conditions and its Ability to be Ascertained*

For a separate document to be successfully incorporated by reference, the original contract must "[make] clear reference to [the] separate document," enabling "the identity of the separate document" to be ascertained. *Standard Bent*, 333 F.3d at 447. This requirement has roots in common law, where a separate document needed to be identifiable "beyond all reasonable doubt" in order to be effectively incorporated by reference. *See PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir.1996) ("While a party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms, a party will not be bound to the terms of any document unless it is clearly identified in the agreement."); *see also* 11 Richard A. Lord, Williston on Contracts § 30.25 (4th ed. 2021) ("So long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, . . . including a separate document which is unsigned.").

6

For example, in *Newark Bay Cogeneration Partnership, LP v. ETS Power Group*, an arbitration clause contained in a company's standard Terms and Conditions was found to have been successfully incorporated by reference where an underlying work proposal made explicit reference to the document.  No. 11–2441, 2012 WL 4504475 at *8-10 (D.N.J. Sep. 28, 2012). Specifically, defendant ETS's proposal read:

> This quotation is based on best efforts estimates of repairs and replacements, it is valid for 90 days and **is based on our standard terms and conditions of sale**.

*Id*. at *9 (emphasis added).  The court rejected the plaintiff's argument that it should not be bound by the arbitration clause contained in the separate document because ETS did not provide the plaintiff with a copy of the document and that the plaintiff did not explicitly acknowledge that it had read and agreed to the additional terms.  *Id*. at *9-10.  Instead, the court found that the language in the work proposal "unequivocally put [the plaintiff] on notice of the conditions that were to apply to [the] transaction," properly incorporating those conditions by reference.

Here, similarly, Bunzl's Terms and Conditions were clearly referenced at the foot of Bunzl's Purchase Orders.  Specifically, the Purchase Orders contained the following sentence in bolded typeface:

> **THIS PURCHASE ORDER IS SUBJECT TO THE BUNZL DISTRIBUTION U.S.A. INC. STANDARD PURCHASE ORDER TERMS AND CONDITIONS DATED MAY 31, 2003, WHICH BY THIS REFERENCE ARE INCORPORATED HEREIN.**

(Def. Reply Br. at *2 (capitalization in original)).  This reference is even more specific than the one at issue in *Newark Bay,* including both the precise name of the Terms and Conditions document and its associated date.  Not only does this reference indisputably put Rodriguez on notice of the existence of separate conditions which were to govern the transaction, but it also

provided him with all the information necessary to ascertain the Terms and Conditions and request a copy of it for his consideration.

Like the court in *Newark Bay*, I reject the argument that the terms of the separate document are not enforceable because Bunzl did not provide the document to Rave Pak. The Third Circuit requires that Rodriguez be subject to a high expectation of diligence in commercial affairs, and it is reasonable to expect a merchant to retrieve and review the legal documents governing its transactions. *Standard Bent*, 333 F.3d at 447 n.10. Accordingly, I find that Defendant referenced and identified with sufficient clarity the Terms and Conditions within in its Purchase Orders.

*ii.   Surprise or Hardship*

Nonetheless, although a separate document may be clearly referenced, its terms might not be incorporated by reference if doing so would result in "surprise or hardship" for the party against whom enforcement is sought. *Standard Bent*, 333 F.3d at 448. With respect to the "surprise" element, the Third Circuit in *Standard Bent* adopted the Second Circuit's framework:

> Surprise includes both a subjective element of what a party actually knew and an objective element of what a party should have known . . . . A profession of surprise and raised eyebrows are not enough. Instead, to carry its burden the nonassenting party must establish that, under the circumstances, it cannot be presumed that a reasonable merchant would have consented to the additional term.

*Id*. (quoting *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 100 (2d Cir. 2002)). As for hardship, courts consider "whether the clause at issue would impose substantial economic hardship on the nonassenting party."[4] *Newark Bay*, 2012 WL 4504475 at *11 (quoting *Bayway*

---

[4] I note that authorities exist which have found that, in the specific context of the materiality of additional contract terms, "hardship" may not be an independent criterion from "surprise," but rather a consequence of it. *See Rocheux Intern. of N.J., Inc. v. U.S. Merchants Fin. Group, Inc.*, 741 F.Supp.2d 651, 682 (D.N.J. 2010) (collecting cases). Although Plaintiff argues that surprise and hardship are independent, and that it need only show one to defeat transfer, the Court does not need to resolve this issue because Plaintiff cannot meet either element.

*Refining Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 224 (2d Cir. 2000)). Courts may also consider industry norms and the relative sophistication of the bargaining parties when evaluating alleged surprise or hardship. *Id*. at *12. The burden to demonstrate surprise or hardship falls on the nonassenting party. *Rocheux Intern. of N.J., Inc.*, 741 F.Supp.2d at 684 (D.N.J. 2010) (quoting *American Ins. Co. v. El Paso Pipe & Supply Co.*, 978 F.2d 1185, 1190 n.9 (10th Cir. 1992)).

In *Newark Bay*, the court found that an incorporated clause requiring arbitration in London, England would not result in surprise or hardship for the New Jersey-based party against whom enforcement was sought. 2012 WL 4504475 at *5. Specifically, the court refused to find that the plaintiff's Vice President's affidavit *proclaiming* surprise and hardship was alone sufficient to meet the party's burden of *demonstrating* these elements. *Id*. at *12. Furthermore, the court found that international arbitration was the norm in the parties' industry, suggesting that sophisticated parties are free to, and should be expected to, bargain around the arbitration clause if they took issue with it. *Id*.

Here, Plaintiff makes no explicit claims that the forum-selection clause would result in surprise or hardship; however, Rodriguez insists that although he saw that the Purchase Orders included language referencing additional terms and conditions, he "never saw, read, or agreed" to the Terms and Conditions. Thus, Plaintiff further argues that enforcement of the Terms and Conditions, specifically the forum selection clause, would result in a "significant financial burden" for its business. (*See* Rodriguez Decl. ¶¶ 4-7, 21.) This reason, alone, is insufficient to support either that "a reasonable merchant would [not] have consented to the additional term," or that "the clause at issue would impose substantial economic hardship on the nonassenting party." *Standard Bent*, 333 F.3d at 448; *Newark Bay*, 2012 WL 4504475 at *11. Plaintiff has not submitted any

9

evidence of the magnitude of its financial burden if it were to litigate this case in Missouri, nor has it shown proof that its industry somehow restricts forum-selection clauses as a practice Furthermore, Plaintiff does not address that, as a sophisticated merchant, Rodriguez should have considered the other terms, including the forum-selection clause, incorporated by reference by the Purchase Orders.  Indeed, as discussed *infra*, Rodriguez certified that the Purchase Orders he received from Defendant "included language at the bottom suggesting that the purchase order was subject to certain standard purchase order terms and conditions."  (Rodriguez Decl. at ¶ 18.) Without more, I cannot find that Plaintiff has met its burden to demonstrate hardship or surprise. Accordingly, Bunzl's Terms and Conditions were properly incorporated by reference, and therefore, the forum-selection clause contained therein is enforceable against Plaintiff.

      **B.**  **The Propriety and Appropriateness of Transfer**

Having found the forum-selection clause enforceable, I next examine the propriety and fairness of transferring this action to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) allows the court to transfer a case to any venue "where [it] might have been brought . . . for the convenience of the parties, in the interests of justice." 28 U.S.C. § 1404(a). As Plaintiff correctly notes, the movant bears the burden of demonstrating the propriety and appropriateness of such a transfer.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). In *Jumara*, the Third Circuit delineated several public and private interest factors which may guide a court's consideration in this regard.  *Id*. at 879-80.

However, when an exclusive forum-selection clause is present, as is the case here, a court evaluating a defendant's section 1404(a) motion to transfer "should not consider arguments about the parties' private interests," and "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atlantic Marine*, 571 U.S. at 64.  To reiterate, the practical effect of the

Court's holding in *Atlantic Marine* is that a valid forum-selection clause will control the section 1404(a) analysis in all but the most exceptional cases. *Id.* at 581. The burden of demonstrating that a venue other than the pre-selected forum should be chosen due to "extraordinary circumstances unrelated to the convenience of the parties" lies with the party against whom enforcement of the forum-selection clause is sought; in this case, Plaintiff bears the burden. *Id*.

Defendant argues that transfer is proper and appropriate because the Parties agreed, through the forum-selection clause, to litigate all cases arising from their Purchase Orders in Missouri, and because no extraordinary circumstances exist which would disfavor transfer. In opposition, Plaintiff argues that both private and public interest concerns weigh against transfer and that Defendant has not met its burden in demonstrating the appropriateness of transfer.

> i. *The Action May Have Been Brought in the Eastern District of Missouri*

At the outset, the moving party must demonstrate that the venue for transfer under section 1404(a) is one "where [the action] may have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Here, Defendant has demonstrated that Rave Pak consented to the jurisdiction of the Eastern District of Missouri by agreeing to the forum-selection clause, which specifies that "[Rave Pak] hereby consents to the jurisdiction of such court or courts and agrees to appear in any such action upon written notice thereof." (*See* Def. Moving Br. at 2-3, Ex. B.) Moreover, Defendant is a Missouri limited liability company headquartered in St. Louis, and therefore, the Eastern District of Missouri is a proper venue under 28 U.S.C. § 1391(b)(1). Indeed, neither Plaintiff nor Defendant argues that the district court in the Eastern District of Missouri would lack jurisdiction. Accordingly, I am satisfied that the Eastern District of Missouri is a forum "where [this action] may have been brought" and is a proper transferee forum.

      *ii.*  *The Appropriateness of Transfer to the Eastern District of Missouri*

Having concluded that the Eastern District of Missouri is a proper venue for transfer under section 1404(a), the Court turns to whether transfer is appropriate in light of the public interest factors, or if, on the other hand, exceptional circumstances exist which necessitate retention of this case in this district.

As discussed previously, when an exclusive forum-selection clause is present, as is the case here, a court evaluating a defendant's section 1404(a) motion to transfer "should not consider arguments about the parties' private interests," and "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atlantic Marine*, 571 U.S. at 64. Accordingly, the Court considers only the following six *Jumara* public interest factors: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879-80.

Defendant argues that these public interest factors are either neutral or favor transfer. (Def. Moving Br. at 3-5.) Plaintiff, however, argues that the public interest factors disfavor transfer because (1) trial would be more "easy, expeditious, and inexpensive" in New Jersey; (2) New Jersey has an interest in deciding local controversies at home; and (3) a judge sitting in New Jersey will be better equipped to apply the New Jersey law which will govern this case. In addition, Plaintiff also argues that its decision to litigate in New Jersey is entitled to deference; its claims arose in New Jersey, making it a more appropriate venue; and New Jersey is the more convenient venue as it relates to the parties' physical locations, abilities to travel, and the location of witnesses

and relevant evidence. (Opp. Br. at 8-11.) However, because *Atlantic Marine* dictates that the Court should not consider private interest factors in its decision to transfer, I will only consider Plaintiff's public interest arguments.

With respect to the public interest factors, Plaintiff argues only that trial would be "eas[ier]" and more "inexpensive" in New Jersey, that New Jersey has an interest in deciding local controversies at home, and the trial judge in New Jersey would be more "familiar with the applicable New Jersey law" governing the parties' dispute. However, Plaintiff provides no evidence or further reasoning to support its contention that trial in New Jersey would be "easier." To the extent that this argument is grounded in the location of witnesses and potential books and records relevant to the dispute, those are private interests that may not be considered based on the presence of a valid and enforceable forum selection clause. *Atlantic Marine*, 571 U.S. at 64.

Nonetheless, even assuming that Plaintiff is correct that the second public interest factor, which relates to the practical considerations, weighs in its favor, the remainder of the public interest factors are neutral or weigh in favor of transfer. First, although New Jersey maintains an interest in deciding local controversies at home, New Jersey also upholds forum-selection clauses. *Verizon New Jersey, Inc. v. DMJM Harris, Inc.*, No. 08-3028, 2009 WL 1283173, at *5 (D.N.J. May 1, 2009). And, while New Jersey will "not uphold a forum-selection clause where the contractually-selected forum has a policy which is repugnant to New Jersey public policy," Plaintiff has not presented any evidence of such a policy here. *Id.* Thus, this factor holds little weight. Further, neither party disputes that a judgment would be equally enforceable in Missouri and New Jersey, or that adjudication of this case in Missouri would be more expeditious. Indeed, the Court notes that New Jersey is a district with considerably more volume than the Eastern District of Missouri. Finally, the Terms and Conditions contain a valid choice-of-law clause

alongside the forum-selection clause. Thus, this action will likely be decided under Missouri law, not New Jersey law.[5] Accordingly, the public interest factors weigh in favor of transfer.

Finally, Plaintiff provides no examples of cases where courts have denied transfer because of exceptional circumstances and in spite of an otherwise valid forum-selection clause favoring transfer. Such cases do exist, however. *See*, *e.g.*, *Lieberman v. Carnival Cruise Lines*, No. 13–4716, 2014 WL 3906066, at *3 (D.N.J. Aug. 7, 2014); *ABC Medical Holdings, Inc. v. Home Medical Supplies, Inc.*, No. 15-2457, 2015 WL 5818521, at *8-9 (W.D. Pa. Oct. 6, 2015); *Advanced International Marketing, LLC v. LXR Biotech, LLC*, No. 17-05086, 2017 WL 4780628, at *3 (W.D. Ark. Oct. 23, 2017). In fact, the Court's independent research shows that three primary reasons exist disregarding an otherwise valid forum-selection clause in favor of transfer: (1) the forum-selection clause "is the result of fraud or overreaching[;]" (2) the clause's "enforcement would violate a strong public policy of the forum[;] or (3) "enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10–11 (1972)). Plaintiff's argument regarding financial difficulties can be construed as an argument that litigation in Missouri would be "so seriously inconvenient as to be unreasonable." For this Court to ignore the valid forum-selection clause on these grounds, Plaintiff must demonstrate that, as a forum, the Eastern District of Missouri is "so gravely difficult and inconvenient [that Plaintiff] will, for all practical purposes,

---

[5] The Court also notes that even if this dispute was governed by New Jersey law, judges in the Eastern District of Missouri are certainly capable of applying and interpreting New Jersey contract law.

14

be deprived of [his] day in court." *Lieberman*, No. 13–4716, 2014 WL 3906066, at *3 (quoting *Kawasaki Kisen Kaisha Ltd. v. Regal–Beloit Corp.*, 561 U.S. 89, 109–10 (2010)).

Here, Plaintiff's assertion that travel and litigation in Missouri would be "extraordinarily burdensome" to his business does not meet the standard of unreasonableness required for a finding of exceptional circumstances. (Rodriguez Decl. at ¶ 21.) Like the defendant in *Vayn v. Schaen*, No. 16-461, 2016 WL 4211838, at *4 (D.N.J. Aug. 9, 2016), Plaintiff provides no evidence of his hardship beyond his declaration of burden. Though Plaintiff may likely incur costs in connection with litigating in Missouri, these costs have not been demonstrated to the degree that "[Plaintiff] will, for all practical purposes, be deprived of [his] day in court." *Lieberman*, 2014 WL 3906066, at *3. Furthermore, the cost of litigating in Missouri could have been accounted for by Plaintiff at the negotiation stage of his contractual dealings with Defendant, had Plaintiff reviewed Bunzl's Terms and Conditions. *See Atlantic Marine*, 571 U.S. at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."). Accordingly, Plaintiff's burden is not so grave as to constitute an "extraordinary circumstance," and therefore, I find that transfer to the Eastern District of Missouri is appropriate based on the forum-selection clause in the Terms and Conditions.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is **GRANTED**; this matter shall be transferred to the Eastern District of Missouri. Defendant's Motion to Dismiss is denied without prejudice, and it may bring the motion in the transferee court.

Dated: August 9, 2021                                                                 /s/ Freda L. Wolfson
                                                                                      Hon. Freda L. Wolfson
                                                                                      U.S. Chief District Judge